Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edward A. Bobrick | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7916 | **DATE** | 12/10/2001 |
| **CASE TITLE** | Robert Rycraft vs. Larry Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Order. Plaintiff's motion for summary judgment is denied, and the defendant's motion for summary judgment is granted.

*[signature]*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 11 2001 date docketed | 16 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/10/2001 date mailed notice | |
| TH✓ | courtroom deputy's initials | 01 DEC 10 AM 11: 45 | TH6 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ROBERT RYCRAFT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 00 C 7916 |
| ) | Edward A. Bobrick, |
| LARRY MASSANARI, Commissioner ) | Magistrate Judge |
| of Social Security, ) | |
| ) | **DOCKETED** |
| Defendant. ) | DEC 1 1 2001 |

## MEMORANDUM ORDER

Plaintiff Robert Rycraft brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying him Disability Insurance Benefits ("DIB") under the Social Security Act.

## I. BACKGROUND

Plaintiff filed an application for DIB on September 4, 1997, alleging he was disabled since February 5, 1997, due to degenerative disc disease. (Administrative Record ("R.") at 90-92, 95). His application was denied at the initial levels of administrative review (R. 54-63), and he requested an administrative hearing. On March 8, 2000, an administrative law judge ("ALJ") conducted a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 21-53). In addition, Frank Mendrick appeared and testified as a vocational expert ("VE"). On May 26, 2000, after considering all the evidence of record, the ALJ found that plaintiff was not disabled because he could perform sedentary work. (R. 10-16). This became the final decision of the Commissioner

when the Appeals Council denied plaintiff's request for review of the decision on September 29, 2000. (R. 4-5).

## A. <u>Evidence of Record</u>

Plaintiff was born on March 10, 1949, making him fifty-one years old at the time of the ALJ's decision. (R. 90). He is 5'8" tall and weighs 180 pounds. (R. 95). He has a high school education and went to college for about two years. (R. 27). He last worked as a supervisor for a pharmaceutical company, which was skilled, light work. (R. 47).

The medical evidence of record shows that plaintiff suffers from degenerative disc disease in his lumbar and cervical spine. Since suffering an automobile accident in 1988, he has undergone three surgical procedures on his spine: a cervical diskectomy in 1991, a cervical fusion in 1995, and a lumbar diskectomy in 1997. (R. 156, 164).

Dr. Mary Moran examined plaintiff in April of 1997. She noted a decrease in neck range of motion, limitation of spinal motion due to pain, and paravertebral muscle spasm. (R. 165). There was no persistent numbness or weakness in plaintiff's lower extremities. (R. 164). Dr. Rajan Raj submitted a report dated July 14, 1997. He noted muscle spasm in the lumbar spine and straight leg raising positive for pain on the ride side at 10 degrees. (R. 161). Cervical spine flexion and extension were both limited to 20 of 30 degrees, while lumbosacral spine flexion was just 10 degrees out of 90. (R. 161). In a report dated September 23, 1997, plaintiff's treating physician, Dr. Alan Kanter, noted that plaintiff experienced pain in his lower back and right leg. (R. 155). There was muscle spasm in

2

plaintiff's cervical and lumbar spine. (R. 156). The doctor stated that plaintiff had no problems sitting, was able to walk for short periods of time, and could perform minimal lifting. (R. 156).

The remainder of the record consists of a few studies, such as MRIs, and brief notes from clinical follow-up visits, many of which are unrelated to plaintiff's disability. For example, some involve complaints relating to a sinus infection (R. 268-269), bronchitis (R.264), mild shoulder strain (R. 226), or sore throat. (R. 224). A great many included no examination at all. (R. 236-239, 241, 245). Weeding through this extraneous matter results in a picture of plaintiff complaining of various levels of back pain and depression, and his physician addressing these complaints with various levels of Zoloft (for depression) and Vicodin (for pain). Examinations, when performed, produced varying results. For example, while plaintiff complained of exacerbated back pain during his visit on September 29, 1998, physical exam was essentially normal. (R. 229). In contrast, an examination on January 14, 1999, revealed muscle spasm in the lower back, although straight leg raising was negative and reflexes were 2+ and symmetrical. (R. 223). In March of 1999, Dr. Kanter noted positive straight leg raising and some diminished strength in the left leg. (R. 218). Straight leg rasing was normal at the next examination (R. 217), produced discomfort at the exam after that (R.215), and reverted to normal at the exam following that. (R. 214). Plaintiff reported an exacerbation of back pain again in September of 1999, at which time Dr. Kanter noted that there was no

tenderness in plaintiff's back, straight leg raising produced some discomfort, reflexes and strength were normal, but that gait was somewhat altered. (R. 198). A month later, gait was normal and straight leg raising was normal. (R. 194). This is essentially the pattern throughout the one-hundred pages of clinical notes covering two years of office visits compiled in this case. (187-286). At one point during the course of treatment, in November of 1997, Dr. Kanter wondered if plaintiff were not exaggerating the severity of his condition. (R. 177). In Dr. Kanter's final submission to the medical record in this case, a brief note dated October 15, 1999, he writes: "Chronic back pain, degenerative disc disease. Needs to ambulate after 15 minutes of sitting." (R. 187).

In May of 1998, plaintiff underwent a CT scan of the lumbar spine. (R. 262). The disc spaces at L3-4 and L4-5 were unremarkable, while there was evidence of some degeneration at L5-S1. (R. 262). The findings were unchanged from the previous CT myelogram from June of 1997. (R. 262). Another MRI of plaintiff's lumbar spine was performed in October of 1998, which revealed abnormal enhancement of a left-sided nerve root at the L3 level. (R. 261). Plaintiff underwent a third MRI of the lumbar spine in April of 1999. There was no evidence of disc herniation or narrowing. (R. 256). The study did reveal disc narrowing at L5-S1, but represented no change from the prior MRI performed in October of 1998. (R. 256). A CT scan of the lumbar spine performed in August of 1999 showed no changes from a May 1998 study. (R. 254). Disc spaces at L3-

4 and L4-5 were once again normal, and the same degeneration at L5-S1 was noted. (R. 254).

At the administrative hearing, plaintiff testified that he could only stand for ten or fifteen minutes, and sit for fifteen or twenty. (R. 31-32). He was able to drive for thirty minutes to the hearing, however, without stopping. (R. 33). Plaintiff stated that, as for household chores, he might wash some dishes, fill the dishwasher, vacuum the floor. (R. 41). He runs some errands, perhaps to the grocery store, and estimated he could lift a five-pound bag of sugar or a gallon of milk. (R. 41-42). He owns two Great Pyrenees dogs, which he walks around his block a couple of times a week. (R. 42). Plaintiff traveled to Arizona in and Las Vegas June of 1999. (R. 44, 189). He spent his time at the pool, did a little gambling, and saw some shows at night. (R. 44). A year before that, in May of 1998, he went to Florida. (R. 44, 234). During that trip, he did a lot of walking and exacerbated his condition. (R. 45, 234). His medications make him tired, but he has difficulty sleeping more than three hours at a time. (R. 31-32).

The VE then testified that plaintiff had acquired transferable work skills from his former supervisory position, including planning and analytical skills. (R. 49). Assuming the plaintiff could perform sedentary work, the VE stated there were 500 such supervisory positions in the pharmaceutical field in the Chicago area. (R. 49). As plaintiff's supervisory skills could transfer to other fields, the VE also noted that there were 35000 telephone operator jobs, 5100 order clerk jobs, and over 10,000 general receptionist jobs

in the area he could perform. (R. 49-50). The ALJ asked whether a person who could maintain a position for only 15-minute intervals could perform these jobs and the VE answered that a person generally had to be active for 50 minutes out of every hour. (R. 51). The VE also stated that there were no jobs that allowed a break every 15 minutes. (R. 52).

### B. <u>ALJ's Decision</u>

After considering all the evidence of record, the ALJ determined that the plaintiff suffered from degenerative disc disease in the lumbar and cervical spine. (R. 15). According to the ALJ, these impairments neither met nor equaled an impairment listed as disabling in the Commissioner's regulations. (R. 15). The ALJ further found that plaintiff's allegations of disabling effects of his condition were not fully credible because they were not consistent with the medical evidence or his activities. (R. 13, 15). As a result of plaintiff's impairments, the ALJ determined that plaintiff was limited to performing sedentary work (R. 15), which the commissioner's regulations define as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

6

20 CFR § 404.1567(a). While the plaintiff could no longer perform his past work, which was light, the ALJ found that plaintiff's past work had left him with transferable skills. (R. 16). Considering plaintiff's capacity for sedentary work, along with his age, education, and transferable skills, the ALJ relied on the Medical Vocational Guidelines, Rules 201.22 and 201.15, to find the plaintiff not disabled. (R. 15-16). This stands as the Commissioner's decision and is presently before this court for review. 42 U.S.C. § 405(g).

## II. ANALYSIS

The applicable standard of review of the Commissioner's decision is a familiar one. The Social Security Regulations provide a five-step inquiry to determine whether a plaintiff is disabled:

   1) whether the plaintiff is currently employed;

   2) whether the plaintiff has a severe impairment;

   3) whether the plaintiff has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

   4) whether the plaintiff can perform her past relevant work; and

   5) whether the plaintiff is capable of performing work in the national economy.

20 C.F.R. §§ 404.1520; 416.920; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). The burden of proof is the plaintiff's through step four; if it is met, the burden shifts to the Commissioner at step five. *Id.* In addition, in this case, the plaintiff must establish that

7

he became disabled prior to the expiration of his insured status. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). In this case, the ALJ determined, at step five, that plaintiff was capable of performing sedentary, skilled work.

The court must affirm this decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997), citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the Social Security Administration. *Binion*, 108 F.3d at 782. Where conflicting evidence would allow reasonable minds to differ as to whether the plaintiff is disabled, the Commissioner has the responsibility for resolving those conflicts. *Id.* Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Id.* Where, as here, the ALJ denies benefits, he or she must "build an accurate and logical bridge from evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). In this case, the plaintiff finds fault with the ALJ's treatment of Dr. Kanter's assessment of October 15, 1999, and with the ALJ's characterization and treatment of plaintiff's testimony. He also contends that there was no basis in the record that plaintiff was capable of performing a significant number of jobs in the economy.

Dr. Kanter offered two evaluations of plaintiff's functional capacity. In the first, dated September 23, 1997, the doctor acknowledged that plaintiff suffered pain in his lower back and right leg, muscle spasm in the cervical and lumbar spine, but that plaintiff had no problems sitting, was able to walk for short periods of time, and could perform minimal lifting. (R. 156). In the other, dated October 15, 1999, Dr. Kanter again noted plaintiff's chronic back pain, but stated that he needed to ambulate after 15 minutes of sitting. (R. 187). The ALJ noted "that there was no intervening change in [plaintiff's] condition to account for the change in Dr. Kanter's assessment." (R. 13). According to the plaintiff, there in no support for this conclusion because plaintiff's condition is degenerative by definition. (*Plaintiff's Motion for Summary Judgment*, at 2-3). While this is true, the medical evidence of record, including objective tests, repeatedly and specifically indicates that plaintiff's condition was not changing in the period from 1997 to 1999. (R. 254, 256, 261-62). A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence in the record. *Zurawski v. Halter*, 245 F.3d at 888. An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations. See *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995). Here, Dr. Kanter's statement that plaintiff needs to walk after fifteen minutes of sitting may not be a medical opinion, but a quote of plaintiff's complaints. Indeed, at one point in plaintiff's application process, Dr. Kanter

9

stated that it was possible that plaintiff's situation was not as painful as plaintiff projected. (R. 177). Clearly, however, the change in Dr. Kanter's assessment of plaintiff's physical capacity was not supported by a similar change in the accompanying medical evidence.

The plaintiff also questions the ALJ's statement that his activities were greatly inconsistent with his asserted limitations. In support, the plaintiff sets out several instances where the ALJ purportedly misquoted plaintiff's testimony. For example, as to the amount of time plaintiff can drive, the plaintiff argues that he testified he could only drive about 15 to 20 minutes. The plaintiff also stated that he was able to drive the 30 minutes to his hearing without problems. Despite plaintiff's protestations in his brief, he did testify that he is able to vacuum the floor, run errands, and walk his dogs. In addition, he also testified that he has been on two vacations recently: to Arizona and Las Vegas eight months before the hearing, and to Florida a year and seven months before the hearing. Plaintiff prefers that this time frame be characterized as "approximately a year to two years prior to the date of the hearing" (*Plaintiff's Motion for Summary Judgment*, at 5), but the record is a bit more specific than that. However plaintiff may wish to characterize his testimony, it cannot be said that his activities are inconsistent with sedentary work.

The ALJ's credibility determinations are entitled to considerable deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir.2000). Since the ALJ is in the best position to observe

witnesses, reviewing courts usually do not upset credibility determinations as long as they find "some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir.1994). Here, the ALJ may not have quoted plaintiff verbatim, but his review of plaintiff's testimony cannot be said to be "patently wrong."

Finally, according to the plaintiff, the ALJ based his conclusion that there were a significant number of jobs available to plaintiff on the VE's testimony. (*Plaintiff's Motion for Summary Judgment*, at 6). Review of the record demonstrates that, while the ALJ considered the VE's testimony—especially on the question of transferable skills – he relied on the Medical Vocational Guidelines, or "Grid," to support his conclusion. (R. 14, 16). It is well-established that the Secretary may rely upon the Grid to satisfy his burden of showing that a claimant can do some work available in the economy. *See Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, (1983); *Walker v. Bowen*, 834 F.2d 635 (7th Cir.1987). The Secretary need not employ the services of a vocational expert if the Grid is applicable. "If the use of the grid is appropriate, the Secretary may rely upon it in determining disability. In such a case, the grid alone constitutes substantial evidence sufficient to uphold the decision of the Secretary." *Walker*, 834 F.2d at 640. Accordingly, we must reject plaintiff's argument that the ALJ improperly relied upon VE testimony in this case.

This is a difficult case in which the ALJ had to sift through pages of brief, clinical notes. The notes failed to demonstrate a consistent pattern to plaintiff's complaints, and

often, his complaints were not accompanied by objective clinical findings. Tests such as MRIs remained unchanged throughout the period during which plaintiff contends his condition deteriorated. His treating physician, who followed plaintiff on nearly a monthly basis for three years, mused as to whether plaintiff might be exaggerating the severity of his condition. The ALJ assessed all this evidence, including plaintiff's testimony, and determined he could perform sedentary work. We cannot find this conclusion is not supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment is DENIED, and the defendant's motion for summary judgment is GRANTED.

ENTERED: *Edward A. Bobrick*
**EDWARD A. BOBRICK**
**U.S. MAGISTRATE JUDGE**

DATE: December 10, 2001